W. J. Taylor, Appellant, v. W. J. Frevert, Appellee.

WATERS AND WATERCOURSES: Natural Obstruction In Course 1 of Natural Drainage. A dominant landowner has a legal right to remove from the course of natural drainage an obstructing dyke or dam *formed wholly by nature*, no prescriptive right in the servient landowners appearing.

WATERS AND WATERCOURSES: Natural Obstruction in Course 2 of Natural Drainage—Prescription. Whether a servient landowner may acquire, by prescription, the right to the undisturbed maintenance of dyke or dam *formed wholly by nature* in the natural course of drainage, *quaere.* If such right may be acquired, the time available commences to run *"when such dyke begins to act as a substantial barrier to natural drainage."*

NUISANCE: Removal of Natural Obstruction in Course of Natural 3 Drainage. The removal of an obstruction which *nature* has built up in the pathway of natural drainage does not necessarily constitute a continuing nuisance—may not constitute a nuisance at all.

WATERS AND WATERCOURSES: Mutually Agreed Drainage— 4 Damages. Where, by *mutual* agreement of two landowners, one of them installs an *agreed* drainage for the mutual benefit of both parties, and later, damage occurs to the one not installing, because the mutually installed drainage proves inadequate, the act of the parties in then mutually agreeing on a new or additional drainage constitutes a settlement of all prior claims for damages.

APPEAL AND ERROR: Supplemental Abstract—Effect. A sup- 5 plemental abstract by appellant, to which he makes no refer-

ence, directly or indirectly, in argument, will be passed without consideration.

*Appeal from Floyd District Court.*—J. J. CLARK, Judge.

FEBRUARY 16, 1918.

REHEARING DENIED MAY 17, 1918.

ACTION in equity to enjoin the defendant from maintaining a certain ditch, and for other relief. On trial to the court, the petition was dismissed, and plaintiff appeals.—*Affirmed.*

*F. & F. M. Lingenfelter,* for appellant.

*H. L. Lockwood,* for appellee.

WEAVER, J.—The defendant owns a farm consisting of two 80-acre tracts, extending one mile east and west and one quarter of a mile north and south, excepting a strip one

1. WATERS AND
WATERCOURSES:
natural ob-
struction in
course of nat-
ural drainage.

rod wide on the line between the two 80's, which is owned by the plaintiff as a means of access to land belonging to him on the north. Defendant also owns about 15 acres lying immediately north of the east 40 acres of the larger tract already mentioned. Plaintiff owns land bordering defendant's land on the west and on the north. The natural slope or drainage of the east part of defendant's land is to the northeast, across the southeast part of plaintiff's land, into a small stream, known as Flood Creek, which crosses the defendant's 15-acre tract. The slope or drainage of the western part of defendant's farm is to the south and west, across a corner of plaintiff's land, into a slough or depression on the land of one Roberts. In the year 1906, by agreement between the parties, defendant laid a 6-inch tile drain, extending from the western border of his land southwest across the corner of plaintiff's land, and discharging into the slough on the land of Roberts. Both plaintiff and defendant connected their drainage with this tile, and used it in common. In December, 1910, it having been dem-

onstrated that the 6-inch outlet was not of sufficient capacity to fully care for such drainage, the parties entered into a written contract, by which defendant undertook, at his own expense, to replace such outlet with larger tile, or to lay a new outlet to carry off the drainage from his own land and disconnect it from the 6-inch tile. In other words, if we understand the effect of this agreement, defendant had the option to construct a new outlet for his drainage, and leave the old outlet to the sole use of the plaintiff, or to replace the old outlet with new tile of sufficient capacity to accommodate both. Defendant elected to take the former alternative, and made a new outlet of 8-inch tile, substantially parallel with the old outlet. Whether the contract was performed substantially according to its terms is one of the subjects of controversy in this case.

Another dispute exists as to the matter of drainage from defendant's east 80. As already mentioned, this land, in its natural state, slopes to the north and east, in the direction of Flood Creek. For about 30 years, a partition fence has been maintained, between the land of plaintiff on the north and the land of defendant on the south; and, with the surface in its natural condition, the drainage would pass from southwest to northeast, under the fence. In the course of time, the growth of grass and weeds along the fence served to catch and detain drifting earth and sand in sufficient quantities to gradually build up beneath the fence a ridge, or dike, of sufficient proportions to interrupt, in some degree, the flow of surface water. In the year 1903, the defendant, with spade or fork, removed or opened this dike, at a point where the fence crossed a slight natural depression, and this accelerated the discharge of the surface water in the direction of Flood Creek. The opening thus made and the discharge of the surface waters so provided had continued without interruption from 1903 until the commencement of this action, in 1914.

Plaintiff's petition states his alleged cause of action in two counts. The first count alleges that the opening or re-

moval of the dike under the partition fence was wrongful, and that the effect of such wrongful act has been to injure the plaintiff's land and to materially depreciate the value of the use of said land and to put the plaintiff to labor and expense to prevent and to repair damage therefrom. The second count sets up the contract between the two parties concerning the tile drainage above mentioned, and alleges that defendant violated its terms, in that he failed to disconnect his drainage from the old 6-inch tile outlet, thereby injuriously interfering with the operation of plaintiff's drainage. Further complaint is made that defendant "failed to construct the original tile drain" across the corner of plaintiff's land of sufficient capacity to properly drain such land.

The defendant denies that he failed to perform his agreement with plaintiff, or has wrongfully diverted the drainage or flow of water from his land to that of the plaintiff.

The court found for the defendant, and dismissed both counts of the petition.

The first inquiry suggested by the appeal concerns the alleged wrong of the defendant in removing the dike under the partition fence in 1903. The facts are somewhat peculiar or unusual, in that it was conceded that the natural drainage was from the defendant's land to the plaintiff's, but had been interrupted by the gradual building of the dike by drifting sand. It is the contention of the plaintiff, in argument, that he is entitled to the protection which this dike afforded, because it had existed "from time immemorial." If, by this expression, counsel mean that the dike had existed so long that the statute of limitations could be interposed against the defendant's right to remove it, the record hardly bears out the contention. Plaintiff avers that the line fence had been built about 30 years, but it does not follow that the dike or ridge had existed that length of time. On the contrary, the natural and reasonable conclusion is that it had not. In the nature of things, the accumulation of sand and dirt was a matter of slow and gradual growth, covering a considerable period of time, and there

2. Waters and Watercourses: natural obstruction in course of natural drainage: prescription.

is no evidence showing, with any definiteness or certainty, when it had acquired such proportions as to materially interfere with the natural flow of surface water. Assuming, for the purposes of this case (but not deciding), that the right to have the dike maintained could be acquired as a matter of prescription, it would seem clear that the time available for that purpose would begin to run only when such dike began to act as a material or substantial barrier to the natural drainage; and of this date, as we have already said, there is no clear or satisfactory showing. The dike is described as being "under the fence," and we may assume that it rests equally upon the land of both parties. Until the prescriptive right, if any, attached, we can see no reason why either party might not lawfully level the accumulated sand and dirt, and allow the drainage to pursue its natural course. The act of defendant of which complaint is made was done in 1903, about the time he purchased and took possession of the land; and the flow of surface waters under the partition fence into the depression on plaintiff's land in the direction of Flood Creek had continued uninterrupted for more than eleven years when this suit was begun. To defendant's claim of the benefit of the statute of limitations in support of his right to such drainage, appellant replies that defendant's act was the creation of a continuing nuisance, and the right of action was not lost to restrain continuing injury or damage. But the rule thus invoked has no necessary application to a case of this character, where it is conceded that, under natural conditions, the plaintiff's is the servient estate, and his denial of the present existence of such servitude rests solely upon an alleged prescriptive right to the maintenance of a dike which serves to prevent or retard such drainage. If the statute may operate to create a right to the continued existence of the dike, it would seem to follow that it is equally available in support of the right to maintain the drainage unobstructed by the dike. But it is said that the effect of the dike is to

3. NUISANCE: removal of natural obstruction in course of natural drainage.

collect the water and cast it upon defendant's land in another and different manner than would be the case under natural conditions. The rule of the cases cited to this point has no application here. It was not defendant's act which prevented the surface water from flowing broadly over the surface, through or under the fence, to the land of the plaintiff. The cause of this obstruction was the dike, and for this dike the defendant is no more responsible than is the plaintiff; and if the effect of the dike was to carry the surface water eastward to the opening which defendant made under the fence into the natural depression in which it reached the creek, we think he cannot be said to have wrongfully diverted the natural course of drainage. Had the dike been constructed by the defendant or his grantors, a very different question would be presented. In our judgment, the trial court rightfully held that the plaintiff established no sufficient ground for the relief sought in the first count of his petition.

It is equally clear that plaintiff failed to make a case upon the other count of his petition. That the original 6-inch tile outlet was laid across the corner of plaintiff's land with his consent, and was, for a time, used by both parties in common, is not denied. With this as a starting point, the force and effect of the written contract is not open to misconstruction. What defendant undertook to do was "either to lay and maintain a tile as an outlet to the tile drainage [of his own land, describing it] and disconnect with the present outlet [describing it], or he will enlarge the present outlet * * * by laying a tile sufficiently large to take care of the water tributary to said outlet on land belonging to parties to this contract." In other words, he was either to replace the 6-inch tile outlet with one of sufficient capacity to meet the needs of both parties, or was to construct a new outlet to carry off his own drainage, and leave the old outlet to the exclusive use of the plaintiff. He elected to follow the latter plan, and did lay a new 8-inch tile outlet for his own use, nearly parallel to the old one. The complaint of

the plaintiff is that the defendant failed to disconnect his own drainage system from the old outlet, with the result that the drainage of plaintiff's land is thereby injuriously affected. This question of fact is the subject of some conflict of testimony, but we find that the apparent preponderance of evidence sustains the defendant's claim that he did disconnect his drainage from the old outlet, and left the same to the exclusive use and control of the plaintiff.

A further claim is asserted, which, if we understand counsel, is to the effect that, when the original 6-inch tile outlet was constructed, in 1906, defendant agreed to make it of sufficient capacity to carry off the drainage of the lands of both parties, but failed to do so; and that plaintiff sustained damage therefrom. If this be the claim, the evidence does not sustain it; and, if we were to give it the utmost effect, it makes no showing for equitable relief. The original 6-inch outlet seems to have been made by mutual contract and agreement, and for the mutual benefit of both parties; and, experience having demonstrated that a larger outlet was desirable, the parties entered into the written agreement to improve the condition in the manner already described. The mistake, if any, in laying the 6-inch outlet, was the mistake of both parties, and their subsequent agreement upon a plan to remedy it should be treated as a settlement or adjustment of their mutual rights or claims to that date, and the written agreement should be looked to for the determination of any controversy which has since arisen with respect to the outlet. Now, when we look to the pleadings to ascertain the precise nature of plaintiff's complaint in this respect, we find that the one and only charge of violation of the agreement by the defendant is that "the said defendant did not disconnect the original 6-inch tile running across plaintiff's land from the main tile on defendant's land, but, instead, constructed an additional 8-inch tile connecting with defendant's main tile upon his land, without disconnecting the said 6-inch tile from the main tile

4. WATERS AND WATERCOURSES: mutually agreed drainage: damages.

on his land;" and that this has resulted in injury to plaintiff's system of drainage. This, and this only, is the cause of action alleged in the second count of the petition. It is said in argument, however, that defendant did not construct the new 8-inch outlet in a proper manner; that it was not laid deep enough, and was not laid at proper grade or with sufficient fall. The sufficient answer to this is, as already pointed out, that no claim of that kind is made in the petition, and no such issue joined.

From a supplemental abstract filed by the appellant, it appears that, after this appeal was taken, the plaintiff filed a supplemental petition in the district court, repleading most of the matter set up in the second count of the petition, and, in addition thereto, for the first time alleged that the new outlet was not laid at sufficient depth or proper grade, with the result that plaintiff's land has been overflowed and damaged. It is further alleged that defendant is about to connect further or additional drainage with said outlet, and, if permitted to do so, will occasion other and further damage to plaintiff's land before the issues in the main case can be determined on the appeal. To prevent such threatened injury, plaintiff asks that defendant be enjoined from increasing the drainage in said outlet until the issues involved in the pending appeal shall have been determined and adjudicated by the Supreme Court. On this showing, it is stated that a temporary writ of injunction was issued, as prayed, and that such matter is now pending in the district court, upon defendant's motion to dissolve the injunction. Counsel do not, in argument, refer to this supplemental showing, nor suggest in what manner it is thought to affect the rights of the parties on this appeal. We therefore pass it, without discussion or consideration.

5. APPEAL AND ERROR: supplemental abstract: effect.

The one complaint in the second count of the petition—the alleged failure of the defendant to disconnect his drainage from the old outlet—is not sustained by the evidence, and therefore presents no ground for equitable relief.

The trial court seems to have given the matters in dispute a careful consideration. By agreement of parties, the presiding judge made personal inspection of the premises, thus enabling him to appreciate and intelligently apply the testimony of the witnesses to the subject-matter of dispute, in a manner not possible to this court. We find no reason in the record for reaching any different conclusion, and the decree of the district court is, therefore,—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.